IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:07cr254-WKW [WO] |
| | ) |
| CHRISTOPHER FOSTER | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the Court is Defendant's Motion to Suppress (Doc. #21). Defendant, Christopher Foster (Foster), seeks to suppress "any statements, physical evidence and/or records obtained as a result of the stop and search" of Foster's vehicle in April 2007. Def.'s Mot. to Suppress (Doc. #21) at 1, 5. Upon consideration of the motion and the testimony at the evidentiary hearing, the undersigned RECOMMENDS that the motion is DENIED.

**I.   BACKGROUND**

Based on the parties' briefs and testimony at the hearing held on March 4, 2008, and to a preponderance of the evidence,[1] the Court finds as follows: On April 10, 2007, Corporal Benjamin C. Schlemmer (Corporal Schlemmer)[2] patrolled the West Fairview area of Montgomery, Alabama. Testimony at the evidentiary hearing revealed West

---

[1]The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. United States v. Beechum, 582 F.2d 898, 913 n. 16 (5th Cir. 1978) (citing Lego v. Twomey, 404 U.S. 477, 489 (1972)).

[2]Corporal Schlemmer testified he has worked for the Montgomery Police Department in the patrol division for six and a half years. Tr. (Doc. #39) at 8.

Fairview Avenue contains four lanes of traffic that run in the east and west directions. Two lanes serve traffic traveling in each direction. And there is no median separating the traffic moving in opposite directions. While traveling eastbound on the inside lane of West Fairview Avenue around 12:15 a.m., Corporal Schlemmer approached Foster's vehicle, which was traveling westbound on the inside lane — the lane closest to the eastbound lane. As Corporal Schlemmer did so, he noticed Foster's vehicle had on its bright headlights. Corporal Schlemmer testified Foster drove an older model Chevy Impala, which had four light bulbs, two on each side, across the front of the vehicle. Corporal Schlemmer testified all four headlights were illuminated when he approached Foster's Impala. The two vehicles continued past each other. Corporal Schlemmer testified Foster never dimmed his bright headlights as this occurred, causing Corporal Schlemmer to experience a flash and/or spots in his eyes and have difficulty seeing the road clearly. Corporal Schlemmer then made a U-turn as soon as he could and proceeded to catch up with Foster's vehicle. Pulling behind Foster's vehicle, Corporal Schlemmer initiated his emergency equipment to stop Foster, who almost immediately pulled off the road and into a parking space at the McDonald's parking lot around the 700 block of West Fairview Avenue. Corporal Schlemmer testified he intended to issue Foster at least a warning citation, if not a traffic ticket, for failure to dim his bright headlights.

Corporal Schlemmer radioed dispatch to relay his location. He then approached Foster's vehicle from the rear, carrying his flashlight. As Corporal Schlemmer

approached, he saw through the back window what appeared to be an SKS rifle laying across the backseat in plain view. Corporal Schlemmer had Foster exit the vehicle and conducted a pat down search of Foster's person. Corporal Schlemmer testified he conducted the pat down search to ensure Foster did not have any weapons on his person and to move Foster away from the rifle so Corporal Schlemmer could safely secure the weapon. Corporal Schlemmer then had Foster step away from his vehicle and take a seat. Corporal Schlemmer repeated these actions with the vehicle's passenger.[3]

Having removed the vehicle's occupants, Corporal Schlemmer secured the SKS rifle to prevent it from accidentally discharging and placed it in the back of his patrol car. Corporal Schlemmer next conducted a "wingspan search" of Foster's vehicle, which Corporal Schlemmer testified included the front area of the vehicle where Foster and his companion were seated. Corporal Schlemmer further testified the wingspan search he conducted included a "quick search, just a little more in depth than a line-of-sight search . . . in the general area [Foster and his companion] c[ould] reach." Corporal Schlemmer testified he conducted this search for officer safety and the safety of others and to ensure Foster and his companion could not grab any weapons from the vehicle had they reentered the vehicle and harm themselves or Corporal Schlemmer at the completion of the stop. Corporal Schlemmer testified he did not know at this point whether or not

---

[3] Corporal Schlemmer identified the passenger as an African American female named Lisa Foster, but testified he was uncertain whether she had married Foster. For purposes of this motion, because the passenger's identity is irrelevant, I refer to the female passenger as Foster's companion.

Foster and his companion would return to the vehicle. During the course of the search, Corporal Schlemmer found a small, clear baggy containing a green leafy substance believed to be marijuana under the lip of the front passenger seat on the floorboard. Corporal Schlemmer then placed the companion under arrest for possession of marijuana. Sometime following the securing of the rifle, Corporal Schlemmer testified he ran an driver's license and warrants check on Foster. Corporal Schlemmer subsequently arrested Foster on an outstanding warrant with the Montgomery County Sheriff's Department. Corporal Schlemmer also wrote Foster a traffic ticket for failing to dim his headlights under Ala. Code 32-5-242(c)(1). See Minute Entry (Doc. #38-3) (containing Govt's Exh. 1, a photocopy of the traffic ticket issued to Foster).[4]

## II.    DISCUSSION

Foster makes three arguments in support of his Motion to Suppress. First, Foster maintains Corporal Schlemmer improperly issued Foster a traffic ticket under Ala. Code 32-5-242(c)(1), as there is no factual basis for a violation of that provision. Tr. (Doc #39) at 3-4. As a result, Foster argues any evidence obtained from the unlawful stop is a fruit and subject to suppression. See Def.'s Mot. to Suppress (Doc. #21) at 3, 5. Second, Foster argues Corporal Schlemmer's search of the vehicle's passenger compartment was not conducted for officer safety, because Foster and his companion had been removed the

---

[4] At some point after Corporal Schlemmer saw the rifle in the backseat, he believed he called for another unit to accompany him at the stop, and the unit arrived. But Corporal Schlemmer could not recall when he made the call or when the unit arrived. Corporal Schlemmer also could not recall the name(s) of the officer(s) who appeared as backup.

car. See Tr. (Doc. #39) at 31.[5]  Third, Foster argues Corporal Schlemmer disproportionately and deliberately enforces alleged violations of headlight-dimming requirements against African American in violation of Foster's right to equal protection under the Fourteenth Amendment.  Def.'s Mot. to Suppress (Doc. #21) at 5.[6]

The Government opposes the motion because Corporal Schlemmer, based on his personal observations of Foster's vehicle, had probable cause to stop Foster for violating Ala. Code § 32-5-242(c)(1); therefore, the Government asserts the officer's motivation in conducting the stop is irrelevant.  See Govt's Response (Doc. #30) at 3-4.  The Government also maintains Corporal Schlemmer was entitled to take reasonable precautions to ensure his safety during the stop, including looking inside the vehicle with a flashlight, ordering Foster and his companion to exit the vehicle, and conducting a protective search of the immediate area where Foster and his companion had been sitting, as the officer had seen a rifle sitting on the back seat in plain view.  The Government

---

[5] Foster adds the search incident to lawful arrest exception only would allow Corporal Schlemmer to search Foster's person, not the vehicle.  While the undersigned need not reach this argument for the reasons provided infra, the Court observes it is firmly established that "[w]hen officers lawfully arrest an automobile occupant, they may search the passenger compartment of the automobile as a contemporaneous incident of the arrest." United States v. Diaz-Lizara, 981 F.2d 1216, 1222 (11th Cir. 1993); United States v. LeCroy, 441 F.3d 914, 925 (11th Cir. 2006) (citing New York v. Belton, 453 U.S. 454, 460 (1981)).  In some circumstances, the exception also has justified searches of a vehicle's passenger compartment following a traffic stop even though the passenger was not actually under arrest at the time of the search.  E.g., United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996).

[6] Foster's Motion to Suppress off-handedly mentions the Due Process Clause.  When asked specifically at the hearing what arguments Foster sets forth in support of the motion, Foster's counsel did not raise any arguments under this provision.  Therefore, the undersigned does not discuss the Due Process Clause.

accordingly refutes that any subsequent statements or evidence seized as a result of the traffic stop were fruits of a poisonous tree. Govt's Response (Doc. #30) at 4-5. The Court agrees with the Government.

### A.     Officer Schlemmer Lawfully Stopped Foster

The Fourth Amendment guarantees individuals security in "their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "'Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision.'" United States v. Woods, 216 F. App'x 931, 932 (11th Cir. 2007) (quoting Whren v. United States, 517 U.S. 806, 809-10 (1996)). Therefore, an automobile stop is "'subject to the constitutional imperative that it not be "unreasonable" under the circumstances.'" Id. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); see also Woods, 216 F. App'x at 932; United States v. Pruitt, 174 F.3d 1215, 1217 n. 1 (11th Cir. 1999) ("We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop. Accordingly, the stop was reasonable for purposes of the Fourth Amendment and withstands review.").[7] A police officer "may

---

[7]Because the Court concludes Corporal Schlemmer had probable cause to stop the vehicle, the Court pretermits discussion of whether reasonable suspicion would have sufficed to support the traffic stop. See United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)
(continued...)

stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990)).  The Court determines whether probable cause exists on an objective basis, "without regard to the law enforcement officers' subjective beliefs." Woods, 216 F. App'x at 934 (citing Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997)).  Here, Corporal Schlemmer stopped Foster's vehicle only after having probable cause to believe Foster had committed a traffic violation.

Section 32-5-242(c)(1) of the Code of Alabama mandates that

> [w]henever a driver of vehicle approaches an oncoming vehicle within 500 feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver.  The lowermost distribution of light or composite beam, . . . shall be deemed to avoid glare at all times, regardless of road contour and loading.

Ala. Code § 32-5-242(c)(1) (1975).  Corporal Schlemmer testified while traveling eastbound around 12:15 a.m., on April 10, 2007, he approached Foster's vehicle, which was traveling westbound.  As Corporal Schlemmer did so, he noticed Foster's vehicle had on its bright headlights.  Corporal Schlemmer testified all four headlights were

---

[7](...continued)
("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . .  Therefore, we analyze the legality of these stops under the standard articulated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968).") (citations in original omitted).

illuminated when he approached Foster's Chevy Impala. The two automobiles continued past each other. Corporal Schlemmer testified Foster never dimmed his bright headlights, causing Corporal Schlemmer to experience a flash and/or spots in his eyes and have difficulty seeing the road clearly. The Court concludes in view of these facts a reasonable officer in Corporal Schlemmer's position could have stopped Foster's vehicle for failure to dim bright headlights and, therefore, Corporal Schlemmer had probable cause to stop Foster. See Woods, 216 F. App'x at 934 (concluding the evidence established probable cause to stop defendant Woods whose car wove over the fog line at least three times); United States v. Johnson, 2005 WL 1412117, at *2 (11th Cir. 2005) (concluding the fact that driver was swerving was sufficient justification to stop the vehicle to insure that driver was neither drunk or sleeping); United States v. Harris, 928 F.2d 1113, 1116-17 (11th Cir. 1991) (same).[8] Because I find Corporal Schlemmer lawfully stopped Foster, I do not find any evidence or statements obtained as a result of the lawful seizure a fruit of the poisonous tree.

---

[8] To the extent Foster argues he was targeted, and the traffic stop was merely pretextual, the Fourth Amendment affords no relief. In Whren v. United States, the Supreme Court held the constitutional "reasonableness" of a traffic stop must be determined irrespective of "intent." 517 U.S. 806, 813 (1996). The High Court conclusively refuted the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe a violation of law has occurred. Id. Because I find Corporal Schlemmer had probable cause to believe a traffic violation had occurred, the seizure of Foster and his vehicle comport with the Fourth Amendment notwithstanding any subjective intention the officer possessed. Id. ("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."); see also United States v. Uriostegui, 420 F. Supp. 2d 1260, 1262 (M. D. Ala. 2006).

B.     **The Search of the Vehicle was for Officer Safety**[9]

Next, Foster asserts Corporal Schlemmer did not search the vehicle's passenger compartment for officer safety because Foster already had exited the vehicle. After Corporal Schlemmer lawfully detained Foster and the vehicle based upon the traffic violation, the uncontroverted testimony reveals Corporal Schlemmer approached the vehicle from the rear with his flashlight illuminated and saw what appeared to be a SKS rifle laying on the backseat in plain view. Corporal Schlemmer was therefore entitled to "take reasonable actions, based upon the circumstances, to protect [himself] during [the] investigative stop[]." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989).

> It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." United States v. Hensley, 469 U.S. 221, 235 (1985). This includes conducting a protective search of the driver, P[a.] v. Mimms, 434 U.S. 106, 111, the passengers, id., and the vehicle, Mich[.] v. Long, 463 U.S. 1032, 1049-51 (1983). The officer may seize any contraband, including weapons, in plain view. Id. at 1049. The officer [also] may use a flash light to illuminate a vehicle's dark interior. United States v. Dunn, 480 U.S. 294, 305 (1987).

United States v. Purcell, 236 F.3d 1274, 1277-78 (11th Cir. 2001) (internal citations omitted).

In this case, Corporal Schlemmer testified he approached Foster's vehicle in a McDonald's parking lot around 12:15 a.m. with his flashlight illuminated. Immediately upon approaching the vehicle, Corporal Schlemmer testified he saw what appeared to be

---

[9]The undersigned points out Foster does not contest the search of his person, nor does he contest that the SKS rifle appeared in plain view.

an SKS rifle in plain view on the backseat. Corporal Schlemmer testified, without contradiction, he conducted a search of the passenger compartment of the vehicle only after seeing the SKS rifle in plain view, removing Foster and his companion from the car, and securing the weapon for officer safety and the safety of others. Corporal Schlemmer also testified the search he conducted – a "wingspan" search – encompassed a "quick search, just a little more in depth than a line-of-sight search . . . in the general area [Foster and his companion] c[ould] reach" were they to return to the car. Corporal Schlemmer further explained this general area included only the front area of the vehicle where Foster and his companion were seated. The undersigned finds that after seeing the SKS rifle in plain view with his flashlight, Corporal Schlemmer reasonably believed Foster presented a threat to his safety and the safety of others. These facts also would lead any reasonable officer to suspect Foster posed a potential danger. After seeing and securing the weapon and removing Foster from the vehicle, Corporal Schlemmer then conducted a quick, limited search of the passenger compartment where Foster had been seated for his safety and the safety of others. Thus, I conclude Corporal Schlemmer took reasonable steps to ensure his safety during this traffic stop. Corporal Schlemmer's search is lawful under the Fourth Amendment, and the evidence discovered during this limited, quick search is admissible. Mich. v. Long, 463 U.S. at 1049 (finding an officer conducting a traffic stop who has reason to believe the driver is dangerous may not only frisk the driver but also search areas of the passenger compartment from which the driver might gain access to a

10

weapon); United States v. Neely, 217 F. App'x 849, 851 (11th Cir. 2007) (finding the officer was entitled to search a vehicle to ensure his own safety where the suspect repeatedly reached under his seat); United States v. Acosta, 363 F.3d 1141, 1146 (11th Cir. 2004) ("The Supreme Court has stated that officers may take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'"); United States v. Gibson, 64 F.3d 617, 623-24 (11th Cir. 1995) (finding a law enforcement officer, during the course of an investigatory stop, may conduct a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual).

    C.    **Equal Protection Claim**

With regard to Foster's Equal Protection argument, the Court concludes Foster is entitled to no relief. While I agree with the general proposition that selective enforcement of the law based on a suspect's race may violate the Fourteenth Amendment, I disagree with Foster's argument that the Court should suppress evidence otherwise lawfully obtained for any alleged violations.

Facing a similar argument, the Sixth Circuit recently explained: "The exclusionary rule is generally applied as a remedy for Fourth Amendment violations." Nichols, 512 F.3d 789, 794 (6th Cir. 2008) (citation omitted). "[A]ny challenge to a search or seizure based on legitimate probable cause, but in which it is alleged the officer's subjective

motive was discriminatory, is doomed to fail." Id. (citing Whren v. United States, 517 U.S. at 813). This is because "[i]t is well-settled that an officer's subjective motivations do not affect whether probable cause existed." Miller v. Harget, 458 F.3d 1251, 1260 (11th Cir. 2006) (citing Whren v. United States, 517 U.S. at 813 (parenthetical omitted); Ark. v. Sullivan, 532 U.S. 769, 771-72 (2001) (concluding that subjective motivations are irrelevant with regard to validity of an arrest); Durruthy v. Pastor, 351 F.3d 1080, 1088 n. 5 (11th Cir. 2003) ("There is no question that an officer's subjective intent is immaterial when there is an objectively reasonable basis for believing that an offense has occurred.")). "Though the Supreme Court left open the door to equal protection challenges in the same context, it gave no hint as to what the appropriate remedy would be." Nichols, 512 F.3d at 794 (citing Whren, 517 U.S. at 813). Because Whren directs that the evidence against Foster not be suppressed under the Fourth Amendment (even if Corporal Schlemmer was improperly motivated by race), I am "reluctant to graft that Amendment's traditional remedy into the equal protection context." Nichols, 512 F.3d at 794. "Indeed, [I am] aware of no court that has ever applied the exclusionary rule for a violation of the Fourteenth Amendment's Equal Protection Clause."[10] Id. And, I find no

---

[10]It is worth noting, as the Nichols Court has, the New Jersey Supreme Court has adopted an equal protection exclusionary rule, but that court did so under its state constitution. See State v. Segars, 799 A.2d 541, 548-49 (2002). While a handful of "other jurists and commentators have proposed such a rule, see, e.g., United States v. Navarro-Camacho, 186 F.3d 701, 711 (6th Cir. 1999) (Moore, J., concurring); Brooks Holland, Safeguarding Equal Protection Rights: The Search for an Exclusionary Rule Under the Equal Protection Clause, 37 Am. Crim. L. Rev. 1107 (2000); Pamela S. Karlan, Race, Rights, and Remedies in Criminal Adjudication, 96 Mich. L.
(continued...)

reason to depart from these well-established principles. Like the Sixth Circuit, I find the proper remedy for Foster's alleged violation is a 42 U.S.C. § 1983 action. See, e.g., United States v. Nichols, 512 F.3d at 794 (citing Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523 (6th Cir. 2002)) (rejecting officer's qualified immunity defense and affirming partial summary judgment in favor of Hispanic motorists who brought equal protection challenge under § 1983).[11]

### III. CONCLUSION

For the reasons provided above, it is the RECOMMENDATION of the Magistrate Judge that Foster's Motion to Suppress (Doc. #21) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before April 2, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is

---

[10](...continued)
Rev. 2001 (1998)," "there does not appear to be any case in which a court has ever actually applied suppression as a remedy, at least in the absence of a concomitant Fourth Amendment violation." United States v. Nichols, 512 F.3d at 794 n. 4.

[11] The undersigned further notes the Supreme Court recently has affirmed the adequacy of § 1983 suits to vindicate constitutional rights and, specifically, rejected suppression as a remedy in the context of a violation of the "knock-and-announce" rule under the Fourth Amendment. See Hudson v. Mich., 547 U.S. 586 (2006). Discussing the exclusionary rule in broad terms, the High Court cautioned that "suppression of evidence . . . has always been our last resort, not our first impulse" and emphasized the rule's "costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." Id. at 2163 (internal quotation omitted).

not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 20th day of March, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE